UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| STEPHEN BUSHANSKY, | : <br> : <br> : |
| Plaintiff, | Case No._____ |
| v. | **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| RESTORBIO, INC., JEFFREY A. CHODAKEWITZ, PAUL FONTEYNE, MICHAEL GRISSINGER, CHEN SCHOR, JONATHAN SILVERSTEIN, DAVID STEINBERG, and LYNNE SULLIVAN, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Stephen Bushansky ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE AND SUMMARY OF THE ACTION

1.  This action is brought by Plaintiff against resTORbio, Inc. ("resTORbio" or the "Company") and the members of resTORbio's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction, pursuant to which resTORbio will merge with Adicet Bio, Inc. ("Adicet") (the "Proposed Transaction").

2. On April 29, 2020, resTORbio and Adicet issued a joint press release announcing that they had entered into an Agreement and Plan of Merger dated April 28, 2020 (the "Merger Agreement"). Under the terms of the Merger Agreement, Project Oasis Merger Sub, Inc. ("Merger Sub"), a wholly owned subsidiary of resTORbio, will merge with and into Adicet in an all-stock transaction, with Adicet surviving as a wholly owned subsidiary of resTORbio. Adicet stockholders will receive approximately 0.8559 shares of resTORbio common stock, subject to adjustment to account for the effect of a reverse stock split of resTORbio common stock, at a ratio mutually agreed to by resTORbio and Adicet in the range of 1-for-4 to 1-for-12 shares outstanding. Following completion of the Proposed Transaction, Adicet stockholders will own approximately 75% of the combined company and current resTORbio stockholders will own approximately 25% of the combined company. The Merger Agreement also contemplates that a contingent value right ("CVR") will be distributed to resTORbio stockholders as of immediately prior to the effective time of the merger, entitling CVR holders to receive net proceeds from the commercialization, if any, received from a third party commercial partner of the product candidate RTB101.

3. On August 21, 2020, defendants filed a proxy statement/prospectus on Form 424B3 (the "Proxy Statement"). The Proxy Statement, which recommends that resTORbio stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) resTORbio management's financial projections, the CVR payments, and the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, JMP Securities LLC ("JMP"); (ii) potential conflicts of interest faced by JMP; and (iii) the background of the Proposed Transaction. The failure to adequately disclose such material information constitutes a violation of Sections 14(a) and 20(a) of the

Exchange Act as resTORbio stockholders need such information in order to make an informed decision whether to vote in favor of the Proposed Transaction.

4. In short, unless remedied, resTORbio's public stockholders will be forced to make a voting decision on the Proposed Transaction without full disclosure of all material information concerning the Proposed Transaction being provided to them. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District. Moreover, resTORbio common stock trades on the NASDAQ Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of resTORbio.

9. Defendant resTORbio is incorporated in Delaware, with its principal executive offices located at 500 Boylston Street, 13th Floor, Boston, Massachusetts 02116. resTORbio is a clinical-stage biopharmaceutical company developing innovative medicines that target the biology of aging to treat aging-related diseases. resTORbio's common stock trades on the NASDAQ Global Select Market under the ticker symbol "TORC."

10. Defendant Jeffrey A. Chodakewitz ("Chodakewitz") has been a director of the Company since August 2018.

11. Defendant Paul Fonteyne ("Fonteyne") has been a director of the Company since December 2017.

12. Defendant Michael Grissinger ("Grissinger") has been a director of the Company since November 2018.

13. Defendant Chen Schor ("Schor") is the Company's Co-Founder, President and Chief Executive Officer ("CEO") and has been a director of the Company since July 2016.

14. Defendant Jonathan Silverstein ("Silverstein") has been a director of the Company since November 2017.

15. Defendant David Steinberg ("Steinberg") has been a director of the Company since March 2017.

16. Defendant Lynne Sullivan ("Sullivan") has been a director of the Company since December 2017.

17. Defendants identified in paragraphs 10-16 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

18. Adicet is a privately held company with its corporate headquarters located at 200

Constitution Drive, Menlo Park, California 94025. Adicet is a pre-clinical stage biotechnology company engaged in the design and development of cutting-edge allogeneic immunotherapies for cancer and other diseases.

19.     Merger Sub is a Delaware corporation and a direct, wholly owned subsidiary of resTORbio.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

20.     Founded in 2016, resTORbio is a clinical-stage biopharmaceutical company that develops medicine to treat aging-related diseases. The Company's lead program selectively inhibits the target of rapamycin complex 1 ("TORC1"), an evolutionary conserved pathway that contributes to the age-related decline in function of various organ systems, including immune, neurologic, and cardiac functions.

21.     The Company's lead drug candidate is RTB101, an oral, selective, and potent inhibitor of TORC1. RTB101 inhibits the phosphorylation of multiple targets downstream of TORC1. Inhibition of TORC1 has been observed to extend lifespan and healthspan in aging preclinical species and to enhance immune, neurologic and cardiac functions, suggesting potential benefits in several aging-related diseases.

22.     In late May 2020, resTORbio initiated a randomized, double-blind, placebo-controlled trial to determine if prophylaxis with RTB101 as compared to placebo reduces the severity of laboratory-confirmed COVID-19 in adults age 65 years or older who reside in a nursing home with one or more residents or staff who have laboratory-confirmed COVID-19.

23.     Thereafter, on July 28, 2020, the Company announced it had received an award from the National Institute on Aging to fund a randomized, double-blind, placebo-controlled pilot

study evaluating RTB101 for COVID-19 post-exposure prophylaxis in adults at least 65 years old.

**The Proposed Transaction**

24. On April 29, 2020, resTORbio and Adicet issued a joint press release announcing the Proposed Transaction, which states, in relevant part:

> OSTON and MENLO PARK, Calif., April 29, 2020 -- resTORbio, Inc. (Nasdaq: TORC) and Adicet Bio, Inc., a privately-held biopharmaceutical company, today announced that they have entered into a definitive merger agreement to create a combined publicly-traded biotechnology company focused on the development of Adicet's off-the-shelf allogeneic gamma delta T cell therapies for oncology and other indications. Adicet's lead candidate, ADI-001, is a gamma delta CAR-T cell therapy targeting CD20 being developed for non-Hodgkin's lymphoma. Adicet has a pipeline of differentiated pre-clinical and discovery programs leveraging its universal, off-the-shelf gamma delta CAR-T cell platform.
>
> Under the terms of the agreement, Adicet would merge with a wholly-owned subsidiary of resTORbio in an all-stock transaction, and the equityholders of Adicet will become the majority owners (75%) of resTORbio's outstanding common stock upon the close of the merger.
>
> "After a thorough evaluation of strategic alternatives, the Board of Directors of resTORbio believes that this merger represents the highest-potential value creation opportunity for resTORbio stockholders," commented Chen Schor, Co-Founder, President and Chief Executive Officer of resTORbio, Inc. "The combined company will leverage Adicet's scientific and product development expertise and pipeline of engineered immune cell therapeutics for cancer based on its proprietary gamma delta T cell therapy platform. We believe this transformative transaction will provide the resources for the combined company to advance multiple programs into the clinic, including Adicet's lead candidate, ADI-001, a gamma delta CAR-T cell therapy targeting CD20, and expand the pipeline in oncology and other indications."
>
> "Adicet believes that its novel and highly productive efforts to date have generated a compelling allogeneic cell therapy platform that overcomes key challenges faced by existing CAR-T therapy," said Anil Singhal, Ph.D. President and Chief Executive Officer of Adicet Bio, Inc. "The proposed merger with resTORbio is the right next step in our trajectory, and we expect that it will provide Adicet with the resources to rapidly accelerate the development of its unique product candidates based on this platform and leverage our cGMP manufacturing process to create best-in-class therapies for patients in need."
>
> Adicet completed an $80 million Series B financing in October 2019 and was backed by OrbiMed Advisors, aMoon2 Fund, Novartis Venture Fund, Regeneron

Pharmaceuticals, Inc., Johnson & Johnson Innovation – JJDC, Inc. (JJDC), OCI Enterprises, Inc, KB Investment Co., Ltd., Consensus Business Group, SBI JI Innovation Fund, Samsung Venture Investment Corporation, Handok, Inc., DSC Investment, Inc. and Pontifax.

In August 2016, Adicet entered into a strategic collaboration with Regeneron focused on developing next-generation engineered immune cell therapeutics using Adicet's gamma delta T cell allogeneic platform technology.

In addition to its gamma delta T cell therapy platform, Adicet also identifies and validates cancer specific targets derived from the intracellular proteome and then generates T cell receptor-like monoclonal antibodies (TCRLs) directed to these cancer-specific peptide targets presented by major histocompatibility complex (MHC) Class I complexes. These TCRLs are designed to arm CAR-modified T cells or as T cell engaging antibodies that target solid tumors.

**About the Proposed Merger**

Under the terms of the merger agreement, stockholders of Adicet will receive shares of newly issued resTORbio common stock. On a pro forma basis, Adicet equityholders are expected to own approximately 75% of the combined company and current resTORbio equityholders are expected to own approximately 25% of the combined company. The parties anticipate that the combined company's primary focus will be to advance Adicet's unique cell therapy platform. The parties anticipate that the combined company will continue the development of RTB101, resTORbio's small molecule product candidate that is a potent inhibitor of target of rapamycin complex 1 (TORC1), for a COVID-19 related indication, with clinical data expected by Q1 2021. The terms of the merger agreement contemplate that a contingent value right (a "CVR") will be distributed to resTORbio stockholders as of immediately prior to the effective time of the merger, entitling CVR holders to receive net proceeds from the commercialization, if any, received from a third party commercial partner of the product candidate RTB101. The terms and conditions of the CVRs will be pursuant to a CVR Agreement resTORbio will enter into prior to the closing of the merger (the "CVR Agreement").

Following the merger, the combined company will leverage expertise from both companies with Chen Schor to serve as President and Chief Executive Officer, Stewart Abbot, Ph.D., as Senior Vice President and Chief Operating and Scientific Officer, Francesco Galimi, M.D., Ph.D., as Senior Vice President and Chief Medical Officer, Lloyd Klickstein, M.D., Ph.D., as Chief Innovation Officer, Carrie Krehlik, as Senior Vice President and Chief Human Resource Officer and Joan Mannick, M.D., as Head of Infectious Diseases to oversee the clinical program conducted under the CVR. At closing, the combined board of directors is anticipated to consist of seven members, which will include five designated from Adicet, one designated from resTORbio and Chen Schor, President and Chief

Executive Officer. Anil Singhal will serve as an advisor to the board of directors. The company will maintain offices in Menlo Park, CA and Boston, MA.

"On behalf of the Adicet Board, we thank Anil for his service to Adicet and welcome his contributions as an advisor to the Board of Directors," said Carl Gordon, Ph.D., member of Adicet's Board of Directors.

The transaction is expected to close in the second half of 2020, subject to approvals of each company's stockholders and other customary closing conditions. Upon completion of the merger, the combined company will operate under the name Adicet Bio and is expected to trade on the Nasdaq Global Market under a new ticker symbol to be determined.

**The Proxy Statement Contains Material Misstatements or Omissions**

25. The defendants filed a materially incomplete and misleading Proxy Statement with the SEC and disseminated it to resTORbio's stockholders. The Proxy Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote their shares in favor of the Proposed Transaction.

26. Specifically, as set forth below, the Proxy Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) resTORbio management's financial projections, the CVR payments, and the financial valuation analyses that support the fairness opinion provided by JMP; (ii) potential conflicts of interest faced by JMP; and (iii) the background of the Proposed Transaction. Accordingly, resTORbio stockholders are being asked to make a voting decision in connection with the Proposed Transaction without all material information at their disposal.

*Material Omissions Concerning the Financial Projections, CVR Payments and JMP's Financial Analyses*

27. The Proxy Statement is materially deficient because it fails to disclose material information relating to resTORbio management's financial projections and the CVR payments.

28. The Proxy Statement sets forth that:

> The terms of the merger contemplate that each holder of resTORbio common stock as of immediately prior to the completion of the merger shall be entitled to one contractual contingent value right ("CVR") issued by resTORbio, subject to and in accordance with the terms and conditions of the CVR Agreement (as defined below), for each share of resTORbio common stock held by such holder as of immediately prior to the effective time of the merger. The CVR holders are entitled to receive net proceeds from the commercialization, if any, received from a third-party commercial partner of RTB101, resTORbio's small molecule product candidate that is a potent inhibitor of target of rapamycin complex 1 (TORC1), for a COVID-19 related indication. The terms and conditions of the CVRs will be established pursuant to a CVR agreement by and among resTORbio, the Holders' Representative and the Rights Agent, expected to be entered into immediately prior to the closing of the merger (the "CVR Agreement").

Proxy Statement at 404. The Proxy Statement, however, fails to disclose *any* potential estimates of the contingent payments resTORbio stockholders may receive in connection with the CVR agreement.

29. According to the Proxy Statement, at an April 15, 2020 Board meeting, following a discussion of Adicet's CVR counterproposal and management's update on the RTB101 COVID-19 studies, "[r]epresentatives of JMP reviewed certain preliminary financial information, subject to various assumptions, regarding the potential value of RTB101 as a successful prophylaxis for COVID-19 for resTORbio stockholders in a standalone company and in a combined company with Adicet." *Id.* at 173. Yet, the Proxy Statement fails to disclose the potential value of RTB101 as a successful prophylaxis for COVID-19 as discussed by the Board at its April 15, 2020 meeting.

30. Further, the Proxy Statement sets forth:

The RTB101 compound IPR&D project was valued using an income approach, ***specifically a discounted cash flow method***, adjusted for the probability of technical success ("PTS"). ***Key inputs include forecast of potential cash flows to be generated by the project and resulting asset***, which was developed utilizing estimates of total patient population, market penetration rates, demand risk adjustment factors, product pricing, costs of goods sold, research and development expenses, selling, general and administrative expenses, cash flow adjustments and partner profit split. The projected cash flows were then adjusted using PTS factors that were selected considering both the current state of clinical development and the nature of the proposed indication, (i.e., respiratory therapeutics.) Finally, the

> resulting probability adjusted cash flows were discounted to a present value using a risk-adjusted discount rate, developed considering the market risk present in the forecast and the size of the asset. IPR&D is accounted for as an indefinite-lived intangible asset until completion or abandonment of the related project.

*Id.* at 409 (emphasis added). The Proxy Statement, however, fails to disclose the implied per share values resulting from the discounted cash flow analysis ("DCF") performed on the Company's RTB101 compound, as well as all key inputs underlying the DCF, including the forecast of the potential cash flows to be generated by the project and resulting asset.

31. Without this information, resTORbio stockholders are unable to evaluate the merger consideration and CVR, resTORbio's financial future as a standalone entity, the accuracy of JMP's financial analyses, or make an informed decision whether the Proposed Transaction serves their best interests.

32. The Proxy Statement also fails to disclose material information concerning JMP's financial analyses.

33. The Proxy Statement describes JMP's fairness opinion and various valuation analyses performed in support of its opinion. However, the description of JMP's fairness opinion and analyses fails to include certain analyses, as well as key inputs and assumptions underlying the analyses. Without this information, as described below, resTORbio's public stockholders are unable to determine what weight, if any, to place on JMP's fairness opinion in determining whether to vote their shares in favor of the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to resTORbio's stockholders.

34. The Proxy Statement states that, "[f]ollowing discussion and questions of management regarding various matters relating to the liquidation plan, including the assumptions on which the liquidation plan was based, the resTORbio Board approved the liquidation plan for use by JMP ***in conducting its financial analyses of resTORbio***." *Id.* at 175 (emphasis added).

Yet, the description of JMP's fairness opinion set forth in the Proxy Statement only includes the *resTORbio Liquidation Analysis* and fails to include any of the **other financial analyses of the Company** performed by JMP for resTORbio.

35. The omission of this information renders the statements in the "Unaudited Prospective Financial Information," "Opinion of the resTORbio Financial Advisor" and the "Unaudited Pro Forma Condensed Combined Financial Information" sections of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning JMP's Potential Conflicts of Interest*

36. The Proxy Statement fails to disclose material information concerning the potential conflicts of interest faced by JMP.

37. The Proxy Statement sets forth:

> JMP and its affiliates are engaged in advisory, underwriting and financing, principal investing, sales and trading, research, investment management and other financial and non-financial activities and services for various persons and entities. JMP and its affiliates and employees, and funds or other entities they manage or in which they invest or have other economic interests or with which they co-invest, may at any time purchase, sell, hold or vote long or short positions and investments in securities, derivatives, loans, commodities, currencies, credit default swaps and other financial instruments of resTORbio, Adicet, any of their respective affiliates and third parties or any currency or commodity that may be involved in the transaction contemplated by the merger agreement. JMP acted as financial advisor to resTORbio in connection with, and participated in certain of the negotiations leading to, the merger. JMP may also in the future provide financial advisory and/or underwriting services to resTORbio, Adicet and their respective affiliates for which it would expect to receive compensation.

*Id*. at 191. The Proxy Statement, however, fails to disclose whether JMP has performed any services for resTORbio, Adicet, or their affiliates in the past two years and, if so, the nature of the services performed and any compensation received in connection with rendering those services.

38.     Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

39.     The omission of this information renders the statements in the "Opinion of the resTORbio Financial Advisor" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

*Material Omissions Concerning the Background of the Proposed Transaction*

40.     The Proxy Statement fails to disclose material information concerning the background process leading to the Proposed Transaction.

41.     The Proxy Statement fails to disclose the terms of any proposals the Company received from April through December 2019 and during January 2020, as well as the proposals submitted or discussed by 15 companies by March 4, 2020.  *See id*. at 160, 161, 165.

42.     The omission of this information renders the statements in the "Background of the Merger" section of the Proxy Statement false and/or materially misleading in contravention of the Exchange Act.

43.     The Individual Defendants were aware of their duty to disclose the above-referenced omitted information and acted negligently (if not deliberately) in failing to include this information in the Proxy Statement.  Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and the other resTORbio stockholders will be unable to make an informed voting decision on the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the
Exchange Act and Rule 14a-9 Promulgated Thereunder**

44. Plaintiff repeats all previous allegations as if set forth in full.

45. During the relevant period, defendants disseminated the false and misleading Proxy Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

46. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Proxy Statement. The Proxy Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about resTORbio's financial projections, the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor JMP, potential conflicts of interest faced by JMP, and the background of the Proposed Transaction. The defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

47. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

48. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

**COUNT II**

**Claims Against the Individual Defendants for Violations
of Section 20(a) of the Exchange Act**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of resTORbio within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of resTORbio, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The Proxy Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy Statement.

54. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Proxy Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

55. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

56. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, resTORbio stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of resTORbio, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to resTORbio stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:  September 1, 2020                             **WEISSLAW LLP**

By _____
Richard A. Acocelli
1500 Broadway, 16th Floor
New York, New York 10036
Tel: (212) 682-3025
Fax: (212) 682-3010
Email: racocelli@weisslawllp.com

*Attorneys for Plaintiff*